UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

DOUGLAS LEONARD,

    Plaintiff,

    v.                                  Case No. 10-C-0814

BANK OF AMERICA NA,

    Defendant.

---

DECISION AND ORDER
DENYING BANK OF AMERICA N.A.'S MOTION FOR SUMMARY JUDGMENT,
DENYING DOUGLAS LEONARD'S MOTION FOR SUMMARY JUDGMENT
AND SETTING FINAL PRETRIAL CONFERENCE

This case comes before the court on cross motions for summary judgment. Douglas Leonard seeks rescission and damages for alleged violations of disclosure requirements under the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. Bank of America, as successor by acquisition of Countrywide Bank, takes the position that Leonard and his former wife signed and dated the copy of the Truth in Lending Disclosure Statement ("TIL") and the Notice of Right to Cancel ("NORTC") for each of the loans at issue acknowledging that they received the required disclosures. Because there are genuine issues of material fact, both motions will be denied.

LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 391–92 (7th Cir. 2011). A genuine issue of material fact exists when, based on the evidence presented, a reasonable jury could find in favor of the

non-moving party. *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010). When faced with cross-motions for summary judgment, the court views all facts, and draws all reasonable inferences in favor of the party against whom the motion under consideration is made. *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 359 (7th Cir. 2011).

## FINDINGS OF FACT

In 2006, Douglas Leonard and his then-spouse, Kathryn Leonard (the "Leonards"), purchased a home in Oak Creek, Wisconsin (the "Property"). (Vidal Decl. ¶ 2, Ex. A at 18.) The Leonards attended at least seven other closings prior to purchasing the Property. (*Id.* at 21.)

On January 8, 2007, the Leonards closed two refinance loans with Countrywide Bank, N.A. ("Countrywide"): (1) a first mortgage for $172,000.00, and (2) a balloon note with an original principal balance of $39,500 (collectively referred to as the "Loans"). (*Id.* at 19, 28; Vidal Decl. ¶ 3, Ex. B; Vidal Decl. ¶ 4, Ex. C.) National Real Estate Information Services ("NREIS") provided the closing services for the Countrywide Loans. (Vidal Decl. ¶ 5, Ex. D; Vidal Decl. ¶ 6, Ex. E.)

Kathleen J. Wood ("Wood"), a closing agent for NREIS, performed the closing of the Loans (the "Closing"). (Vidal Decl. ¶ 8, Ex. G; Vidal Decl. ¶ 9, Ex. H.) The Closing took place in the dining room at the Leonards' home, the Property at issue. (Vidal Decl. ¶ 2, Ex. A at 21.) Leonard testified that the Closing took "about 30 minutes," but he had sufficient time to read, review, and ask questions of all documents at the Closing:

> Q   Did anyone prevent you from taking whatever time you needed to review the documents?
> A   No.
> Q   So you had the opportunity to review all of the documents, correct?

2

> A Yes.
> Q You understood that some of the documents you were signing were obligating you to several thousands of dollars of debt, correct?
> A Yes.

(*Id*. at pp. 46-47) Leonard does not recall asking questions during the Closing. (*Id*. at p. 29.)

After signing, the Leonards handed each signed document to Wood who placed the signed copies in a separate pile. (*Id*. at 27.) Because the Closing involved two Loans, Wood reviewed and executed all of the documents for the 4163 Loan with the Leonards before reviewing and executing the documents for the 4147 Loan. (*Id*. at p. 28.) The Leonards both signed and dated a copy of the Notice of Right to Cancel ("NORTC") for each of the Loans acknowledging that they each received two copies of the NORTC for each loan. (*Id.* at 45-46, 58-60; Vidal Decl. ¶ 10, Ex. I; Vidal Decl. ¶ 11, Ex. J.)

After reviewing the documents for both Loans, Wood gave the Leonards a set of documents with an orange cover sheet on top labeled "Borrower's Copy", and additional orange sheets separating the documents for the two loans. (Vidal Decl. ¶ 2, Ex. A at 14, 66, 76-77, 98.) After Wood gave the Leonards the documents, Leonard put them into an unlocked, built-in cabinet in the dining room. (*Id.* at 68-71.) Neither of the Leonards reviewed the documents before placing them into the cabinet. (*Id.* at 68.) China, appliances, wine glasses, flower vases and school/art supplies for the Leonard's six children were kept in the cabinet. (*Id.* at 69-71.)

A few months after the Closing, Leonard moved the documents from the dining room cabinet to an unlocked portable filing cabinet in the bedroom closet that the couple shared.

3

(*Id.* at 72-77.)  Leonard did not review the documents while moving them to the filing cabinet in the closet.  (*Id.* at  79.)

In August of 2008, a year and a half after the Closing, Mrs. Leonard and the children moved out of the Property, removing belongings.  (*Id.* at  81.)  The Leonards' divorced in March of 2009 and Leonard took on the mortgages for the Property.  (*Id.* at 132-134.)

More than two years after the Closing, Leonard received a solicitation letter from his current counsel inquiring about the handling of the mortgages.  (Vidal Decl. ¶ 2, Ex. A at 78.)  Leonard was told to bring his Closing documents to counsel's office.  (*Id.* at 80.)  He did so without reviewing the documents.  (*Id.* at 79, 80.)  After Leonard  brought the Closing documents to counsel's offices, he was told that his set contained insufficient disclosures. (*Id*. at 99-100.)

After the complaint was filed in this case, Bank of America ("BOA") asked Leonard to produce a full, complete copy of the documents he received at the Closing.  (*Id.* at 87-89; see also Vidal Decl. ¶ 12, Ex. K.)  In response, Leonard (through his counsel) produced documents bates labeled 1 through 97.  (Vidal Decl. ¶ 13, Ex. L. )  Four months after responses to BOA's discovery requests were due, Leonard's counsel produced documents related to the 4147 (bates labeled 98-128) for the first time.  (Vidal Decl. ¶ 14, Ex. M.)  The only documents produced for the 4147 Loan were the Settlement Statement, Closing Instructions and Addendum to the Closing Instructions and Identity Affidavits.  (Vidal Decl. ¶ 14, Ex. M.)

Leonard did not attempt to rescind the 2007 Loans within three days of the Closing. (Vidal Decl. ¶ 15, Ex. N; Vidal Decl. ¶ 16, Ex. O.) Instead, years later, he sent BOA letters seeking rescission of both Loans.[1] (*Id.*) BOA denied the requests. (See Compl. ¶¶ 1, 20.)

CONCLUSIONS OF LAW

The cross motions for summary judgment raise two issues: (1) whether Leonard was provided with the requisite copies of his notice of right to cancel the loans; and (2) if not, whether Leonard acted timely in seeking to rescind the loans.

The declared purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Beach v. Ocwen Federal Bank*, 523 U.S 410, 412 (1998)(citing 15 U.S.C. § 1601(a)). Accordingly, TILA requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights. *Id.* Failure to satisfy the requirements of TILA gives rise to damages and the right to rescind. 15 U.S.C. § 1640(3); § 1635(a) and (f). Rescission is "a process in which the creditor terminates its security interest and returns any payments made by the debtor in exchange for the debtor's return of all funds or property received from the creditor (usually the loan proceeds)." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008) (citing 15 U.S.C. § 1635(a)).

---

[1]The joint proposed stipulated material facts state that Leonard sent Bank of America letters seeking rescission of both loans on October 16, 2009. However, Exhibits N and O attached to the Blythin declaration are addressed to Countrywide and dated January 5, 2010. Regardless, there is no dispute that written notice was mailed prior to the expiration of the three-year statute of repose.

A borrower has three business days to rescind a consumer loan that uses their principal dwelling as security. 15 U.S.C. § 1635(a). TILA and Regulation Z require the creditor to provide a NORTC form stating the specific date on which the three-day rescission period expires. *Id.*; 12 C.F.R. § 226.23(b)(5). If the creditor omits the expiration date and fails to cure this omission by subsequently providing the information, the borrower may rescind the loan within three years from the date of closing. 15 U.S.C. §§ 1635(a), (f). TILA gives a borrower no express permission to assert the right of rescission as an affirmative defense after the expiration of the three-year period. *Beach*, 523 at 413.

TILA provides that written acknowledgment of receipt of any disclosures does no more than create a rebuttable presumption of delivery. 15 U.S.C. § 1635(c). Focusing on the statutory language, the Seventh Circuit Court of Appeals has written that this phrasing suggests strongly that Congress was warning courts not to overrate the importance of the acknowledgment. *Marr v. Bank of America, N.A.,* 662 F.3d 963, 967 (7th Cir. 2011). Moreover, the Third Circuit has described the borrower's burden as "minimal, given that the presumption's only effect is to require the party contesting it to produce enough evidence substantiating the presumed fact's absence to withstand a motion for summary judgment or judgment as a matter of law on this issue." *Cappuccio v. Prime Capital Funding LLC,* 649 F.3d 180, 189 (3d Cir. 2011).

Here, Leonard has produced the closing documents that he brought to his attorney's office. Instead of four copies of the NORTC and two copies of the TIL Statement, Leonard maintains that he received one complete and correct copy of the closing documents. However, by producing Leonard's written acknowledgment of receipt of the disclosures, BOA created a rebuttable presumption of delivery.

6

On the other hand, Leonard offers his testimony that the closing documents were kept "intact" when he placed them on the top shelf of a cabinet in his dining room and then moved them to the bottom drawer of an unlocked filing cabinet in his bedroom. In addition, he produced one correct copy and one mis-printed partial copy of the NORTC, and two others, and the documents he submitted contained insufficient disclosures and misprinted copies of other papers.

BOA cites evidence that the documents produced initially related to the first loan and did not include orange sheets with Borrowers Copy typed on them. The first loan documents were out of place and pages were missing. Leonard's children and wife had access to the unlocked cabinet and file drawer, and Leonard admitted that his former spouse removed items from their home after the divorce. Moreover, Leonard testified that it is possible he received documents related to the loans prior to closing and that he lacked independent knowledge as to the contents of the documents he received at closing. Thus, there are material facts in dispute that cannot be resolved without a trial.

Regardless, the court must still decide whether Leonard's claim is time barred because Leonard failed to initiate this action within the three-year statute of repose governing the rescission claims set forth in 15 U.S.C. § 1635 (f) and 12 C.F.R. § 226.23(a)(3). Leonard acknowledges that the three-year period is a statute of repose, but maintains that he complied with that time limit by mailing a notice to Countrywide on January 5, 2010. (Doc. 32 at 26-27; Blythin Decl., Ex. 3.) Moreover, he asserts that he is entitled to enforce the right to rescission "up to one year after Countrywide's refusal to honor his right to rescind."

Section 1635(f) unequivocally states right of rescission expires three years after the date of the consumption of the transaction. *Beach,* 523 U.S. at 412 (holding that § 1635(f) "completely extinguishes the right of rescission" at the end of the three-year period.) Indeed, § 1635(f) "says nothing in terms of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous." *Id.*, 523 U.S. at 417. In enforcing the three-year statute of repose, the United States Supreme Court distinguished damages and rescission, which receive "unmistakably different treatments" inasmuch as damages are subject to a one-year statute of limitations running from the date of the occurrence of the violation rather than a statute of repose for rescission expiring three years after the consummation of the transaction. *Id.* 523 U.S. at 418 (citing 15 U.S.C. § 1640(e)). The Court explained:

> And the distinction thus indicated makes perfectly good sense. Since a statutory right of rescission could cloud a bank's title on foreclosure, Congress may well have chosen to circumscribe that risk while permitting recoupment damages regardless of the date a collection action may be brought .... We respect Congress's manifest intent by concluding that the Act permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run.

*Id.*, 523 at 419.

The Court in *Beach* addressed when the right to rescind expires and whether it can be tolled. However, it did not address how a consumer may exercise that right. *See Cocroft v. HSBC Bank USA, N.A.*, 2012 WL 1378645 (N.D. Ill. 2012). The Federal Reserve Board, one of the agencies charged with implementing TILA, promulgated Regulation Z, 12 C.F.R. § 226, *et seq*, to address, among other things, the disclosure requirements and the form of the notice. *See Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 763 (7th Cir. 2006). Regulation Z provides that "to exercise the right to rescind, the consumer shall

8

notify the creditor of the rescission by mail, telegram or other means of communication."
12 C.F.R. § 1026.23(a)(2). Further, Regulation Z gives creditors 20 days from receipt of
the rescission notice to "return any money or property that has been given to anyone in
connection with the transaction and [] take any necessary action to reflect the termination
of the security interest." 12 C.F.R. § 226.23(d)(2).

Citing Regulation Z, the Fourth Circuit Court of Appeals held recently that borrowers may exercise their right to rescind a mortgage under the TILA timely by simply giving written notice to a servicer of their intention to rescind within three years of closing their loan. *Gilbert v. Residential Funding LLC, et al*, 678 F.3d 271, 276 (4th Cir. 2012). Some courts within the Seventh Circuit have taken a similar approach. *In re Hunter,* 400 B.R. 651, 659-60 (Bankr. N.D. Ill. 2009); *McGee v. Countrywide Bank, N.A.*, Case No. 09-C-226 (E.D. Wis. Nov. 2, 2009); *Weaver v. Countrywide Bank, N.A.*, Case No. 09-C-227 (E.D. Wis. Oct. 9,. 2009); *Hubbard v. Ameriquest Mortg. Co.,* 624 F. Supp. 2d 913, 920 (N.D. Ill. 2008). For these courts, neither § 1635(f) nor Regulation Z says anything about the filing of a lawsuit and they will not graft such a requirement upon them. *See, e.g., Gilbert*, 678 F.3d 271, 277 (4th Cir. 2012).

In ruling, the Fourth Circuit recognized the "split of authority as to whether the borrower must file a lawsuit within three years after the consummation of a loan transaction to exercise her right to rescind, or whether the borrower need only assert the right to rescind through a written notice with the three-year period. *Id.*, at 276. Published decisions from the Ninth and Tenth Circuit Court of Appeals have held that rescission suits must be brought within three years from the consummation of the loan, regardless of whether the notice of rescission is delivered within the three-year period. *Rosenfield v. HSBC Bank*,

9

USA, 2012 WL 2087193 at *7 (10th Cir. June 11, 2012); *McOmie-Gray v. Bank of America Home Loans*, 667 F.3d 1325 (9th Cir. 2012); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002). In addition, a number of district courts have concluded that a rescission suit is barred if the suit is not filed within the three-year period. *See Beakes v. GMA Mortgage,* LLC, 2012 WL 1204635 at *2 (D. Minn. April 11, 2012); *Jones v. U.S. Bank National Assoc.*, Case No. 10-CD-008 (N.D. Ill. Mar. 11, 2011); *In re Thomas*, 2008 WL 5412113 at *6-8 (Bankr. E.D. Pa. Oct. 17, 2008); .

As recently as June 12, 2012, the Tenth Circuit held that the "mere invocation of the right to rescission via a written letter, without more, is not enough to preserve a court's ability to effectuate (or recognize) a rescission claim after the three-year period." *Rosenfield,* 2012 WL 2087193 at *7 (10th Cir. June 11, 2012). Underlying this decision is the theory that by accepting a consumer's unilateral notice of an intent to rescind as a legally effective exercise of rescission would indirectly enlarge the congressionally established three-year time period under TILA potentially clouding title for an indefinite period of time. *Id.*, 2012 WL 2087193 at *7. The Tenth Circuit did not read Regulation Z as establishing that notice is a sufficient condition for the exercise of the TILA rescission right, but merely a necessary predicate act to the ultimate exercise of the right. *Id.*, 2012 WL 2087193 at *9.

While this court appreciates the concerns regarding the potential threat to a clear title in cases where it is difficult to discover that a rescission demand has been made, it cannot ignore the plain language of § 1635(f) and Regulation Z. Section 1635(f) refers to the obligor's right of rescission and Regulation Z explains how to exercise the right to rescind. Consequently, the court adopts the reasoning of the Fourth Circuit and finds that Leonard

10

exercised his right to rescission by writing to Countrywide before the three year statute of repose expired. In addition, the court notes that the facts of this case are not such that the creditor denies knowledge of the consumer's intent to rescind. The bottom line is that the rescission suit is timely. However, damages are only available for one year from the violation. 15 U.S.C. § 1640(e). Now, therefore,

IT IS ORDERED plaintiff's motion for summary judgment is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that the parties shall appear for a final pretrial conference on October 26, 2012, at 10:00 a.m. in Courtroom 222.

Dated at Milwaukee, Wisconsin, this 20th day of July, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE